'Chief Justice Robertson,
delivered the'opinion of the court.
Thsíse are cross writs of error prosecuted to reverse a judgment rendered in favor of Henderson against Richards for $ 1150 cents, in an action of assumpsit for twenty three straw bonnets. The casé was once before in this court, (see the case in manuscript,) and was remanded for a new trial. The judgment now complained of was rendered on the last trial.
Henderson insists that the judgment is too low, and Richards objects that it is too high; and divers grounds -have been taken by each party for assailing it.
We, deem the controversy too frivolous and the case too plain to require or deserve a detailed exposition of 'it in all the minute and technical aspects which the'elaborate ingenuity of the counsel in the circuit court, and of the same counsel in this court, has endeavored to make it exhibit. We have heretofore decided, that, evidence, substantially the same as that now presented, sustained the action.,
The facts authorized the jury and court to decide as they did, that no sufficient excuse was shown or atfempted to be shown for the non-delivery of the bonnets. Their value at the time when they ought to have been delivered, was certainly the proper measure of damages; and that value could not, according to the proof, have exceeded 50 cents for each hoatict. The only doubt which the evidence allows, is, whether" the value was equal to that sum. We are not disposed to sot aside the verdict of the jury, merely because we are not convinced with mathematical or even moral certainty, that it may not be a¡ few cenlihigher or lower than the value of the'bonnets; according to a slight prepondew anee of probabilities.
We haVe thus virtually disposed of the whole controversy in all Hs fcameleon aspects; and cannot forbear an expression of our regret, that so much time and talie»t and money should be expended worse than uselessly^ *532 in unnecessary and obstinate litigation about twenty three old straw bonnets, ascertained by a jury to have-been worth- only .$11 5-3'cents; the controversy commenced in the declaration has been amended four times: there have been two trials, and two mistrials; and one discontinuance in'the circuit court, and four-writs of error to this court, all growing out of, or engrafted upon the straw bonnets! Such persevering and fruitful litigation may be profitable to those who receive costs, but insures irreparable loss and damage to both parties litigant. This-is far from being the-■only case which exemplifies the mischievous consequences of cherishing, instead of stilling, a.vexatious-spirit for controversy and litigation. ,. ,
irritó*,'for Hbnderson; Xnroe, for. Richards-
The judgment of the circuit court is, therefore, affirmed; and each plaintiff in error must pay to-each defendant in error his costs.
TJic counsel fir Rickards presented the following -petiliát fir a re-hearing, which was granted;
It is cctQSifiei,e|f by the counsel of Richards, that it is bis duty to move for a re-hearing of this cause, and. 'therefore be does it.
^ The -vexatious spirit of controversy .add -litigajtion on tKe other side, can in no wise affect the law arising on-•the errors assigned by Richards, the victim of this mischief.-
It cannot be the law, that because this man was sued in a frivolous action, tlaerefore-it was-right to prohibit him from' praying it was also groundless,, and then to subject him to pay a suiri equal to. .exactly-double the highest damages (absque injuria, as it is believed they were,) the plaintiff could’ pretend he had suffered^ according to the rule the court has laid down.
It appears there were two. suits on this demand rn the circuit court; the declaration was often amended, and there- were several trials and mis-trials; and two or three motions were made below for restitution of money collected for costs; and, Hendeyson has prosecuted three writs of error in this court,. But in all these proceedings Richards has been .the defendant. and has re,lied- exclusively on the pleas of npn-ássurnpsit in *533 ■'tile circuit court, and the denial of the errors as- ■ sighed-in the cases prosecuted in this court. Noelaborate ingenuity has been displayed by his counsel, to .give a technical aspect to the cause, nor has his side of "the controversy ever changed its character or color; and it is hoped, that when it is recollected Henderson always, even on the argument of his las;, writ of error in this court, demanded upwards of twenty pounds of lawful money for these worthless bonnets of straw, (proved not to be worth twenty five cents,) both the ■ party Richards, and all concerned for him (for he had more counsel than one,) will be commended for not' ■confessing the action and paying this exorbitant price • for peace. It might have been better, but tin1' -counsel could not have so conjectured. On the first trial in the circuit court, the judge instructed theju^v .that the plaintiff had proved no cause of action, and it: was supposed correctly. The late chief justice so decided on a motion to him for a supersedeas. This was then the only cause between the parties, and thus it was stifled and ended. But Henderson brought a writ of error in this court. It was then a frivolous controversy ; the evidence did not conduce i o prove the plaintiff was entitled to recover, according to any rule. than one half the sum recovered on the last trial; Jl- 'be costs- now amount to about twenty times as and i. '•be principal of the judgment. This court irmch as u. well denounced the case asfrivQ>G¡,a might then ha, „ ’w affirming, the judgment stifled anfl vexatious, and u, "rented theirreparable lo-v .theyexatious spirit and piv. Bat the case-was uences have ’i-as- and damage to both parties litigare, reversed, .and all these mischiveous conse,, followed. Both Richards and his counsel were op* ed to thp reversal, and no new proceedings were after-wards instituted by him in the circuit court; and this court lias decided that the writs of error since prosecuted by Henderson, were groundless. It was the advice of Richards’ counsel, after the last trial ip the circuit court, to submit and pay the judgment if Henderson would be content; but Henderson would not. He sued out another writ of error, and then another, and not until after the third was issued on Henderson’s part, was this writ advised and issued on the part of • Richards. This was judiciously done. By the present .judgment Richards i« condemned to the payment hi *534 «ore than one hundred dollars damages and costs, and as bis counsel verily believes, unjustly and against law; and, therefore, be could not and would not stifle the spirit of resistance his client displayed- against the judgment. There was no danger in the effort, because on the failure, the adversary party could not recover more than about six dollars additional costs; and, therefore, the writ was issued. This much has been acid to divest the case of its cameleon aspects; and now we will proceed and present it in its true colors. It-is a very plain case. But, as the court has not stated the facts in any of the opinions delivered, it wifi be proper to set them down here, and then consider the law arising on them. When the case is thus rccordecLwe can discern its governing principle.
These are the facts as they appear of record:
This Charles Henderson sued Richards in an action of assumpist commenced on the l ith da/of February, 1825. Note the date.-
Inhis first count he states that he* had, on the 15th day of January, 1825, instituted an action in the Franklin circuit court for his use, but in the name of John Henderson; against Richards and his wife; that he had in- ' that action declared for goods, wares and merchandize sold and delivered to the wife of Richards wrhilst shG was afeme sole,before her marriage to Richards; that, pending that suit, the plaintiff, Charles Henderson, and the defendant Richards agreed, that the defendant should give the plaintiff $50 in cash, and his promissory note for $40 67 cents, payable on the 28th January thereafter, and that the defendant would return to said plaintiff and deliver to him and his possession eleven straw bonnets at $2 50 cents each, and twelve straw bonnets at $2 each; and that the plaintiff agreed, on his part, to dismiss the suit. It is then averred, that the suit had been ordered to be dismissed; that the promissory note had been given, and the money agreed on had' been paid, but that the defendant had failed to deliver the bonnets, although demanded at his house, &c.
In the second count the same case is stated: The third count is to this effect: “ that, whereas, there was a certain other settlement and contract between the said plaintiff and defendant, whereupon, in consideration that said plaintiff would withdraw and discontinue said *535 -suit aforesaid, that he, the said defendant, would pay to the said plaintiff the sum of §50 in hand, his due bill or promissory note for $40 07 c.ents, payable on the 28th January thereafter,-being the .28th day of January next after the date of said note, and also, to deliver into the possession of said plaintiff, eleven straw bon* -nets at $2 50 cents each, twelve straw bonnets at $2 each, with an advance of twenty five per centum upon said prices, making in all, the sum of $04 37i cents. And the said Charles Henderson avers, thatthe said suit has been ordered to be dismissed and has been dismissed; but the said defendant,” &c. proceeding with -an assignment of breach in the non-delivery of the born, nets. r
The fourth count is the same of the third in substance, except that in the stead of a demand of the bonnets at defendant’s house, an excuse for the omission is alleged.
In the fifth count it is alleged,that the defendant being indebted to the plaintiff $04 37 cents, promised to-pay the same by delivering the plaintiff at his store room, in Frankfort, twenty three straw bonnets; but failed, &c. To this declaration, the defendant pleaded-non-assumpsit.
On the trial, when the judgment was rendered to' which this writ of error is prosecuted, the plaintiff gave the following evidence, objected to by the defendant. It was all by Mr. Samuel, the plaintiff’s witness. lie said, that some time in the year 1824, a certain John Henderson was a merchant in Frankfort; that he became considerably indebted and embarrassed, and it was apprehended ‘would go to ruin, and his creditors lose their debts on him; that to prevent this, the witness caused the said John Henderson to convey all his saleable property and debts owing to him, to the plaintiff, as trustee, for the payment of all the said John’s debts; that the witness, acting for the creditors, ■but without any authority whatever from any of than, took from the plaintiff an obligation to pay all the said John’s just debts due to creditors in Philadelphia?; that'in-this arrangement, a certain debt claimed on tbp .said John Henderson by John A. Markley was not embraced, because the witness liad not thought it just. After this arrangement, the witness superintended the store as the agent of the plaintiff; and as such, instituí; *536 ed ¡i suit, in the name of John Henderson for the use of Charles against the defendant and his w.fe, on an account for tue sum of #162 1Ü cents; in which account was charged eleven straw bonnets at $2 25 cents, and twelve at $2 50 cents, to whica prices were added, on the account, an advance of twenty five per centum; whxh account had been all created before the said transfer to the plaintiff, and was embraced by the conveyance m -rust. That, about the time the suit was brought, the defendant, on being urged for payment, alleg d she said bonnets bad never been purchased, bn. wer only deposited with his wife for sale. That, pend.i g tíie nuil, die witnes. and the defendant agreed o-i the e terms: Witness lo ’-ave the suit dismissed,and the defendant to pay; 50 .n money, o give his note for •$4*J 70 cents, which money was paid, and note given and afterwards paid; and return twenty t.uree bonnets to witness acting as above, the same that had been .previously obtained" from the said John Henderson; that the bonne s were not to be delivered at anv ce.tain price; that witness did go to the ele ks office and direct the suit to be dismissed, and a few days afterwards'applied to the defend a-1 to return the burners at his hatter’s shop, about two hundred yards from his house, where the milliner’s shop was k-:p-.; that fie defendant answered, tne bonnets, had been sewed by a constable, under an execuiion against the said John j lenderson, in favor of the said Markley, and flier could not he returned. Witness a-'dod, that “Markley had never consented to the conveyance of said Henderson’s properly in trust.
To all this evidence and every part of it fhe defendant objected, and moved the court loexclude the same. The court overruled the mofion, and all the said evidence was given to the jury, The defendant then moved the court to instruct the jury as in case of a nonsuit, the above being all the evidence on the plaintiff’s part; but the court overruled Ibis motion also, and the defendant excepfed.
The defendant offered to prove, by witness, that the said bonnets had never been sold by John Henderson, to the defendant nor his wife, but had heen deposited with her to be kept hi her milliner’s shop and sold for him, -awl that they had always remained ike property of tty *537 i aid John Henderson, and nevar came to the possession of the said Chirles Henlcrson or any olkir person for him, and that the said debt to Marklcy was just, and due prior to the said conveyance of John Henderson to the plaintiff in trust; and offered in evidence a complete copy of the record of the judgment, execution and constable’s return. By which record and further parol evidence offered by the defendant, it appeared that Markley had instituted his warrant against John Henderson on the 19th day of January, H25, and on the same day recovered a judgment for $91 82 cents; -that an execution had been issued on the same day and •was placed in the constable’s hands before the date of •the agreement declared on; and that he did, by the authority thereof, seize and take the bonnets before the return of them was demanded, and afterwards sold them, in part satisfaction of said Ienderson’s debt, to Mark- . ley. But the plaintiff objected to all this evidence, and the court excluded every part of it, and the defendant excepted. It was then proved that the twenty three bonnets were not worth, at the time of the contract to deliver them, twenty five cents each. This was the positive testimony of the only witness who ■ever saw the bonnets, or gave any evidence conducing to prove, in any degree, the value of (hern. On this testimony the jury found a verdict for §11 59 cents, exactly double their utmost value. A motion For a new trial was made and overruled, and an exception taken to that decision. And the errors question each and all the decisions of the court. Here is the the case. Now Jet the law of it be considered.
It is insisted that the circuit court erred in admitting .the several articles of evidence given by the plaintiff, Henderson, all of which were objected to. The parol evidence of the conveyance made by John Henderson to Charles, in trust for his creditors, was incompetent, because the deed or instrument of conveyance was the better.evidence and •ought to have been produced. The obligation taken by the wi tness of Charles Henderson, binding him to pay John’s debts, ought to have been produced; and in its absence, unaccounted for, the parol evidence was not competent. It was not competent to prove by parol the institution and pendency of the first suit in the .name of John Henderson against Richards and wife, *538 -without producing the record of tbe suit, wliich wa& not done. Nor was itcompeteat to prove tbe contents of the account of John Henderson against the wife of Richards, without producing the paper itself. And the court erred in not excluding the whole of the plaintiff’s evidence; and also erred, in overruling the motion of Richards to instruct the jury to find for the defendant. Because, in the absence of the record and papers, the competent evidence of the other facts did not show any cause of action; and because, on the supposition the testimony was all competent to prove the facts it was ini ended to establish, it did not conduce to prove a cause of’ action. But, if it did prove any cause of action, it .did not prove the cause of action stated in any one of the counts of the declaration. The evidence on the last trial is not the same as on the first trial, and which is set out in the bill of exceptions on which Henderson first brought the case here.
In all the-counls the allegation is, that the agreement of Richards was to deliver eleven straw bonnets at $2 50 cents each, and twelve straw bonnets at $2 each, in some of the counts it is said there was to be an advance upon them of twenty five per-centum; in others, this allegation is omitted. But in ail the numerous statements the plaintiff makes of his'case, he distinctly alleges that the bonnets were to be delivered at a certain price; and in no count arc the bonnets, the con», tract was made to deliver, identified. We do not learn from the declaration, that John Henderson had ever at any time owned a bonnet, nor that Charles or the witness had ever owned such an article. If, however, any infersnee could he drawn from the word return, found in in some of the counts, coupled with the words deliver to the plaintiff, Charles Henderson,it would be this in* fercnce, that the bonnets to be delivered under the contract, had at some timo before been in the possession of Chude,i Henderson; and, therefore, if the allegations in the count's are to be considered as specifying any certain individual bonnets, they were not those which •the witness proves Richards agreed to deliver. But the fact is, the declaration does not identify the article. The variance,.then, between the allegation and ■the proof is-this: .that the allegation is, that Richards agreed to deliver bonnets made of straw at certain, prices, amounting to fifty odd or sixty odd dollars,* And the evidence is, that the agreement was to deliver *539 « certain identical lot of straw bonnets, twenty in number, the property of John Henderson, wuich had been deposited with the wife of Hichards-before.hef marriage, as they alleged, for sale. And the question is, whether this variance is not fatal? And can tuere be a doubt upon it? If a man agree with one man to deliver him the celebrated horse Eclipse, and with another to deliver him a race horse at five thousand dollars, and with a third to deliver to him the horse Sir-Henry, are these all one agreement? And will proof of one support the allegation of the other? When lhe= agreement is to deliver articles at a certain.price, the. measure of recovery for the breach is the price fixed. And had the plaintiffs evidence proved his declaration, lie would. have been correct as to the measure of recovery. But, when the contract is to deliver a certain individual article, the damage suffered by the plaintiff by the breach of the contract, is the value of the article which ought to have been delivered, but was not.
On these grounds, it is earnestly insisted that the circuit court erred in overruling the motion to exclude the-evidence, and also, in nol instructing the jury to find . for the defendant.
The evidence offered by Richards, - in the defence}. was all rejected. It was admissable under two neads. First, it did certainly,in conjunction with the plaintiff's testimony, conduce to prove that in the arrangement between the Hendersons and the witness, it was intended to hinder, delay and defraud Markley, the j ust creditor of Charles Henderson the bankrupt merchant. There were severa^.badges of fraud. All the. saleable property of the debtor was conveyed,- and all • his choses in action transferred, without the concurrence or authority of the creditors in any manner whatever. And this claim of Markley was purposely excluded from the arrangement for the benefit of other creditors. But the fact is, there was no competent proof that John Henderson-owed any other just debt. Ore the whole case the evidence ought to have been left to the jury, anddhey allowed to denounce the transaction, as fraudulent as against Markley, a judgment creditor; and on this ground to have determined that the bonnets were subject to sale under the execution against John HendersQn. On these grounds it certainly would have - *540 followed, that Richards had a sufficient.excuse for the non-delivery of (he bonnets; But it is contended that the bonnets were subject to seizure and'sale under the execution, without regal’d to the allegation of fraudulent intention, or in other words, that the evidence offered in the defence would have proved this fact.
The plaintiff’s evidence did not prove these bonnets were included in the conveyance to Charles Henderson. TheyVwere not then claimed by John Henderson. They were not saleable,,-and were not delivered. On thecontrary,boththeHendersonscIaimedthat'Richards owed the price of the bonnets. It cannot then be said; the property in (hem passed to Charles Henderson. He certainly did not get the possession; nor did Charles or the witness,his agent, ever claim either the bonnets or the possession of them, until the contract sued on was made; before which; the execution against John Henderson was in the constable’s hands.
On thisstateof the plain! iff’sevidence, it was certainly competent for the defendant-to read-the record of Markley’s judgment and execution in evidence, and prove, as he offered to do, that “ the bonnets had never been sold by John Henderson to the defendant nor his wife; but had been deposited with her to be kept in her shop and sold for him, and that they had always remained the properly of the said John Henderson, and never came to the possession of the said Charles Henderson nor any other person for him; and that the said debt to Marldey was just, and due prior fo the said conveyance of John Henderson to the plaintiff.” If the bonnets had always remained the property of John Henderson, or if they had always remained’ in his possession,, or that of his bailee, up' to the date of the agreement of Richards to deliver them to the plaintiff, and before that time Markley’s execution against John Henderson-was in the constable’s hand, surely the bonnets were subject to be seized and sold to pay John Henderson’s debts. And if they were sold and appropriated to this purpose, the plaintiff could not in conscience have any just cause of action to recover their value of Richards. No one can recover in an action of assumpsit against equity and conscience. But the agree nient of Richards to deliver the bonnets was predicated cm the supposition that Charles Henderson was.. *541 substituted to all the rights of John. Charles claimed the benefit and control of the suit in the name of John. Another, however, interposed, who had a better claim tinder John Henderson to the bonnets than Charles had, and this was the constable with his execution, received into his hands before the possession of the goods had been changed or pretendedlo have been changed; and before it was ever admitted by Charles Henderson or his agent, he had any right either in or to the bonnets. But all the defendants evidence offered to prove this state of case, was rejected. Suppose a man lend me a horse to-day, and on to-morrow, pretending he had sold him to me sues me for the price. But on the next day agrees to dismiss the suit on the consideration of my agreement to return the horse; but, before 1 can comply, the sheriff, who all the lime had an execution in his hands against the man, seizes the horse to satisfy his just debts and sells him. Am 1 liable? Or would 1 be liable, even had I puf chased the horse, and afterwards cancelled the contract, but before I could return the horse, the sheriff seized him?
Is it no defence to an action on a covenant to return a hired slave well clothed at the end of the year, to allege and prove the sheriff had seized and sold him under an execution against the owner? It is impossible to distinguish the principle of the cases. The plaintiff, Charles Henderson, did not pretend to be any tiling but a trustee for John, and he could noi be liable for more than he recovered. There was no competent evidence of his being under any other obligation. At all events the defendant was not concluded and estopped from insisting that that was the character of the transaction. But the damages were certainly excessive, by at least one half, if any thing can be made certain by testimony. There was no description given to the bonnets, except that they were Araw. The only witness examined, touchingtheir value, who ever saw them, or knew any thing to shew their value, swore positively they vrere not wortli twenty five cents. On this testimony, it does seem to the counsel that it maybe arithmetically ascertained that the plaintiff was not entitled to recover above §'5 75 cents. It is true, it would be hard to say how much less, but it is impossible to press the value higher than that sum, because the evidence did no^-in any degree conduce to a higher point. See the *542 c.ase of Allen vs. Sykes, &c. decided at the present term.
It cannot be said the law zuill not care for the difference between the $11 50 cents and the §5 75 cents, because, that rule would defeat the plaintiff’s whole action. The difference between these prices, of which the complaint is now made, is exactly equal to the utmost the plaintiff’s evidence conduced to prove he was' entitled to recover.
It is the firm conviction of the counsel of Richards, that he was wrongfully sued; that it was impossible for him to comply with his agreement; because the bonnets were subject to the payment of Markley’s debt; and, that the plaintiff, Charles Henderson, has neither in law nor in fact been in any wise injured by the seizure and sale of the goods by the constable, nor by the noncompliance of Richards with his agreement. And in fact, the plaintiffhas been neither injured nor damaged; and yet, he has well nigh ruined Richards with his suits.
In this view of the case, a re-examination of the casé is asked, that justice may be done.

After a re-hearing of the above case, Chief Justice Robert son delivered the opinion of the court as follows:

On re-consideration, the court (Judge Underwood dissenting,) is satisfied with the former opinion? Wherefore, it will remain unchanged.